IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES E. MOSS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 2:15cv87-WKW |
| | ) (WO) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is petitioner James E. Moss' ("Moss") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Cv. Doc. No. 1.[1] After considering the parties' submissions, the record, and the applicable law, the court concludes that Moss's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## I. INTRODUCTION

On November 2, 2011, a jury found Moss guilty of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and 24 counts of aiding and assisting in the preparation and presentation of false tax returns, in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2.

Moss was tried with his codefendant Avada Jenkins, who was convicted of the same offenses.[2] The evidence established that Moss was the owner of Flash Tax, a Montgomery tax

---

[1] References to document numbers ("Doc. No.") are to those assigned by the clerk of court in this civil action ("Cv.") and in Moss's criminal case, 2:011cr26-MEF ("Cr."). All page references are to those assigned by CM/ECF.

[2] Three codefendants indicted with Moss and Jenkins—Lutoyua Thompson, Chiquita Broadnax, and Melinda Lambert—pled guilty and testified against Moss and Jenkins.

preparation business, and that Jenkins worked for Moss as a tax preparer. Several former Flash Tax employees testified that Moss trained his employees to prepare customers' tax returns so as to inflate the refund amount claimed on the returns artificially. To do this, Moss instructed the employees, among other things, to fabricate self-employment income and falsify business losses on a Schedule C form. In addition to testimony from Flash Tax employees, the government presented testimony from undercover tax agents confirming the existence of the tax fraud scheme and the fact that Moss himself prepared multiple fraudulent tax returns. Twenty former Flash Tax customers also testified against Moss and Jenkins, confirming that Flash Tax had included false information on their returns.

Following a sentencing hearing on July 26, 2012, the district court sentenced Moss to 160 months in prison.

Moss appealed to the Eleventh Circuit, where he argued that (1) the evidence presented at trial was insufficient to support his convictions; (2) his sentence was procedurally unreasonable because the district court improperly calculated the total amount of tax loss, which affected his base offense level and, correspondingly, his advisory guidelines imprisonment range; and (3) the district court erred in applying an obstruction-of-justice sentencing enhancement under U.S.S.G. § 3C1.1. See Cv. Doc. No. 4-4 at 13–14 and 46–75.

On November 5, 2013, the Eleventh Circuit entered an opinion finding that Moss's claims lacked merit and affirming his convictions and sentence. *Moss v. United States*, 543 Fed. App'x 959 (11th Cir. 2013).

On September 5, 2014, Moss filed a *pro se* motion for a new trial claiming that the prosecution violated *Giglio v. United States*, 405 U.S. 150 (1972), by soliciting or failing to correct

known false testimony from four government witnesses at his trial. Cr. Doc. No. 348. The district court denied that motion on July 13, 2015. *Id.,* Doc. No. 363; *see also id.,* Doc. No. 361.

On January 25, 2015, Moss filed this § 2255 motion raising claims that his trial counsel was ineffective for (1) failing to present exculpatory deposition testimony from codefendant Avada Jenkins and video footage from his business's surveillance system; (2) failing to move for a severance of his trial from that of codefendant Jenkins; (3) failing to call additional witnesses to testify; (4) failing to impeach government witnesses who allegedly gave false testimony; and (5) failing to follow through on his comments to the jury during opening statements that Moss would testify at trial. Cv. Doc. No. 1 at 4–10 and 14–17.

## II. DISCUSSION

### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

1. ***Failure to Present Exculpatory Evidence***

4

Moss claims that his trial counsel, Richard K. Keith, was ineffective for failing to present exculpatory deposition testimony from his codefendant, Avada Jenkins. Cv. Doc. No. 1 at 14–15. According to Moss, Jenkins gave two sworn statements stating that Moss "did not know anything about" the fraudulent tax returns prepared and filed by Flash Tax employees and that Moss had even warned employees not to prepare false returns or they would be fired. *Id*. at 14. Moss also contends that Keith was ineffective for failing to present exculpatory video footage from the business's surveillance system, which he says showed Jenkins preparing false tax returns and "stealing tax refunds while hiding it from the Petitioner and other employees." *Id*.

In an affidavit addressing Moss's allegations, Keith states:

> The petitioner claims that co-defendant Jenkins would have testified that he was innocent, and, that he could have played a video of Jenkins preparing false tax returns and stealing tax refunds while hiding it from the petitioner and other employees.
>
> The petitioner had no reason to actually believe that co-defendant Jenkins would subject herself to perjury by actually testifying that the petitioner was innocent. I had no communication with co-defendant Jenkins or her lawyer that she would testify on the petitioner's behalf. The petitioner apparently relies on fraudulent deposition testimony where his co-defendant initially in her first deposition claimed everyone was guilty except the petitioner. The petitioner had coerced and coached co-defendant Jenkin's perjured testimony at this deposition that was a partial basis for his enhancement for obstruction of justice.
>
> The video the petitioner refers to does not exist as the petitioner alleges. There is no video that shows anything of substantive value as the petitioner would have this court believe.
>
> The petitioner did show up up during the middle of trial with his laptop claiming to have video (but no audio) of certain exculpatory evidence. Even if the video has been timely provided to the Government in reciprocal discovery, it did not show anything at all of exculpatory value.

Cv. Doc. No. 3 at 1–2.

Testimony at trial indicated that, after IRS agents initiated an investigation of Moss and Flash Tax, Moss, in an attempt to obstruct the investigation, directed Jenkins and two other

5

company employees, Chiquita Broadnax and Melinda Lambert, to provide false deposition testimony to the attorney then representing Moss aimed at exculpating Moss and placing the blame on others within the company for training employees how to prepare fraudulent tax returns. *See, e.g.,* Cr. Doc. No. 309 at 15–16, 26, and 86–87; Cr. Doc. No. 311 at 208–13 and 233–39. *See also* Cr. Doc. No. 278 (PSI) at 9, & 18; *id*. at 12, && 33–34. Moss then instructed his attorney to send these false statements to the IRS. At sentencing, Moss received an obstruction-of-justice enhancement for this conduct. *Id.* at 15, & 46; Cr. Doc. No. 319 at 97.

Moss does not explain how Keith could have effectively used Jenkins's deposition testimony at trial. As the government observes, had Keith sought to introduce Jenkins' statements, he would have drawn attention to the fact that Moss had coerced Jenkins into making false statements, which would have reflected negatively upon Moss. *See* Doc. No. 4 at 8. Keith's tactical decision not to introduce Jenkins's deposition testimony was professionally reasonable, especially when the jury heard from Broadnax and Lambert that they had provided false, coerced statements to Moss' then attorney under circumstances like those under which Jenkins' statements were made. Moss fails to demonstrate deficient performance by Keith.

Moss submits no video footage as an exhibit or exhibits with his § 2255 motion. With his *pro se* motion for a new trial, which he filed in September 2014, he submitted several DVDs containing low-resolution video footage—with very limited audio—apparently taken from Flash Tax's surveillance system. *See* Cr. Doc. No. 348. Nothing in this video footage can be said to depict Jenkins preparing false tax returns or stealing tax refunds from Moss or other employees of the business. If this is the video footage Moss refers to in his § 2255 motion, Keith accurately characterizes the footage as having no exculpatory value. Cv. Doc. No. 3 at 2. Moss does not establish how Keith could have made use of the video footage to advantage his defense. Even if

6

this or other video footage definitively showed Jenkins preparing false tax returns or committing dishonest acts while working at the business, there would be little evidentiary benefit for Moss—as the substance of the government's case was that Jenkins, like her codefendant Moss, was guilty of knowingly preparing a large number of fraudulent tax returns while working at Flash Tax. Because Moss fails to demonstrate that any such evidence was material or reasonably likely to affect the outcome of his trial, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 2. *Failure to Move for Severance*

Moss next contends that Keith rendered ineffective assistance of counsel by failing to move for a severance of his trial from that of Jenkins. Cv. Doc. No. 1 at 14–15. According to Moss, Jenkins has stated she would have testified on his behalf if the trials were severed. *Id.* at 15.

Addressing this claim, Keith maintains there were no grounds for a severance. Cv. Doc. No. 3 at 2. As reflected in the portion of his affidavit quoted in the previous issue, Keith also states that neither Jenkins nor her lawyer ever indicated to him she would testify on Moss's behalf and that Moss "had no reason to actually believe that co-defendant Jenkins would subject herself to perjury by actually testifying that the petitioner was innocent." *Id*. at 1. Further, Moss offers no support for his claim that Jenkins has represented that she would have testified on his behalf if the trials were severed.[3]

"A defendant who moves for severance in order to enable him to obtain favorable testimony from a codefendant must show: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4)

---

[3] The government argues that even if Jenkins has stated she would have been willing to testify on Moss's behalf at a separate trial, such a statement would be best characterized as an after-the-fact-expression of regret that she chose not to attempt to "clear" Moss. Civ. Doc. No. 4 at 10.

that the codefendant would indeed have testified at a separate trial." *United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir. 1986). Here, Moss' allegations fail to establish that Jenkins would indeed have testified on his behalf at a separate trial and fail also to show the substance of the exonerative testimony she would have provided. Moreover, Moss fails to demonstrate that the joinder of his trial with Jenkins' resulted in the "clear and compelling prejudice" required to warrant severance. *See United States v. Kabbaby*, 672 F.2d 857, 861 (11th Cir. 1982); Fed.R.Crim.P. 14. Moss's conclusory assertions fail to show that Keith's failure to move for a severance was professionally unreasonable or that he was prejudiced because of Keith's performance. *Strickland*, 466 U.S. at 687–89. Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3. *Failure to Call Additional Witnesses*

Moss contends that Keith was ineffective for failing to present five additional "fact witnesses" – specifically, Charlena Grant, Vanessa Davis, Kwantrice Thornton, Shalonda Timmons, and John Mackey. Cv. Doc. No. 1 at 15–16. Moss maintains that the first four of these individuals, former Flash Tax employees, would have testified that he did not train employees of the business to prepare fraudulent tax returns and that Mackey, a Flash Tax customer, would have testified that his tax returns contained no false information. *Id*. According to Moss, the testimony of these uncalled witnesses "could have swung the case in [his] favor." *Id*. at 16.

Addressing Moss's claim, Keith states:

> I subpoenaed 27 witnesses for trial and called every witness to testify that was available during the course of the trial. Witnesses Grant and Davis effectively refused to testify to the petitioner's claim of "no tax fraud training" by their apparent intentional disappearance during the trial proceedings. I have no recollection as to what happened to witnesses Thornton and Timmons, as to whether they left the courthouse as well and as to why they would not testify on the petitioner's behalf as to the "no tax fraud training." I called every witness to testify that was present during the trial.

8

> It is my opinion that these particular "no tax fraud training" witnesses disappeared and refused to testify after they found out that petitioner's "no tax fraud training" witness Aurelia Johnson ended up taking the 5th Amendment against self-incrimination when asked if the fraudulent tax returns she was filing were the result of the training she received from the petitioner.
>
> Additionally, the petitioner's witness Eddie Warren did testify to petitioner having "no tax fraud training." However, the Government had at least 7 witnesses testify that the petitioner did train his employees to prepare fraudulent tax returns and that Warren was a willing participant in the tax fraud scheme led by the petitioner. The Judge referred to Warren as an unindicted coconspirator.
>
> The subject witnesses the petitioner claims I did not call were curiously unavailable after Johnson's testimony and the court's comment about Warren. Witness Mackey had no value to the petitioner's defense after the Government's case in chief.

Cv. Doc. No. 3 at 2–3.

The record reflects that Keith called 16 witnesses to the stand for the defense. *See* Cr. Doc. No 312 at 2–3; Cr. Doc. No. 313 at 2–3. As Keith's affidavit clarifies, Grant, Davis, Thornton, and Timmons made themselves unavailable after the trial began. "Counsel cannot be deemed deficient for failing to call an unavailable witness." *Brown v. McNeil*, No. 09-61055-CIV, 2010 WL 6405670, at *10 (S.D. Fla. Jul. 12, 2010). And the testimony of Mackey, a single Flash Tax customer, would have meant little after the government had presented overwhelming evidence of irregularities on the tax returns of numerous other Flash Tax customers. A petitioner cannot maintain an ineffective assistance claim "simply by pointing to additional evidence that could have been presented." *Id*. (quoting *Van Poyck v. Florida Dep't. of Corrs.*, 290 F.3d 1318, 1324 (11th Cir. 2002)).

The decision of which witnesses to call "is the epitome of a strategic decision, and it is one that [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). "Whether to present certain testimonial evidence is a matter of trial

9

strategy, and complaints of uncalled witnesses are generally disfavored." *Sanders v. United States*, 314 Fed. App'x 212, 213 (11th Cir. 2008); *see Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003). "This is especially true because allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice-prong of *Strickland*." *Jones v. McNeil*, No. 07-22367-CIV, 2009 WL 1758740, at *6 (S.D. Fla. Jun. 22, 2009). The test for ineffectiveness is not whether counsel could have done more, as perfection is not required; the test is whether some reasonable attorney could have acted, in the circumstances, as the present attorney acted. *Waters*, 46 F.3d at 1518.

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Here, Moss merely asserts that the uncalled witnesses would have testified to the matters he claims. He does not demonstrate that the uncalled witnesses would have presented testimony of the sort he suggests. The court must therefore "decline [Moss's] invitation to engage in unguided speculation as to the value of the omitted testimony of hypothetical witnesses." *Hernandez v. Wainwright*, 634 F. Supp. 241, 248 (S.D. Fla. 1986).

For the reasons set forth above, Moss fails to show that Keith's failure to present the uncalled witnesses was professionally unreasonable or that he was prejudiced by Keith's performance. *Strickland*, 466 U.S. at 687–89. Therefore, he is not entitled to relief based on this claim of ineffective assistance of counsel.

### 4. *Failure to Impeach Government Witnesses*

Moss contends that Keith rendered ineffective assistance by failing to impeach certain government witnesses who he says testified falsely. Cv. Doc. No. 1 at 16–17.

Moss first alleges that "a discovery error" prevented Keith from effectively impeaching the "false testimony" of IRS Agent Don Ololade, who, as part of the IRS's investigation of Moss, posed as a customer of Moss's tax preparation business. *Id*. at 16. Moss does not explain what he means by a discovery error. However, he seems to suggest that Agent Ololade testified falsely that, during his undercover investigation, he did not sign a tax return prepared by Flash Tax employee Melinda Lambert. *Id.*; *see also* Cr. Doc. No. 348. The accuracy of Agent Ololade's testimony in this regard was a subject of considerable discussion at trial and a matter about which Ololade was fully cross-examined by Keith. Cr. Doc. No. 309 at 123–34. Moreover, evidence concerning whether Agent Ololade signed the tax return during his undercover investigation would, at most, constitute immaterial impeachment evidence on an insignificant point not reasonably likely to affect the outcome of Moss's trial.

Moss next alleges that Jerome Givhan, a Flash Tax customer, testified falsely that he did not return to Moss's business to amend a tax return containing false business losses previously prepared by one of Moss's employees. Civ. Doc. No. 1 at 16. Keith cross-examined Givhan regarding this matter at trial. Cr. Doc. No. 310 at 208–10. Moss points to no evidence demonstrating that Givhan's testimony was false. With his motion for a new trial, Moss submitted the above-mentioned DVDs containing video footage apparently taken from his business's surveillance system. *See* Cr. Doc. No. 348. Nothing in this video footage demonstrates in the least the falsity of Givhan's testimony. Furthermore, as with his above-discussed claim about Agent Ololade, Moss fails to demonstrate that any evidence in this regard was material or was reasonably likely to affect the outcome of his trial.

Finally, Moss alleges that Keith was ineffective for failing to use the DVD video footage to impeach cooperating witness Chiquita Broadnax. Cv. Doc. No. 1 at 16. According to Moss, the video footage shows Broadnax preparing false tax returns and committing other dishonest acts while working at Flash Tax. *Id*. Moss' claim notwithstanding, nothing in this video footage definitively shows Broadnax preparing false tax returns or committing dishonest acts. The video footage contains little of evidentiary value for Moss. Further, that Broadnax had prepared false tax returns while working at Flash Tax was not in dispute. She pled guilty to such acts, and the jury was informed of that fact. When it came to impeaching Broadnax, Keith's efforts were better directed to doing what he did: thoroughly cross-examining Broadnax about her prior deposition statements that were inconsistent with her trial testimony. Cr. Doc. No. 311 at 235–39.

Because of his failure to demonstrate deficient performance by Keith or resulting prejudice, Moss is entitled to no relief based on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687–89.

### 5. *Failure to Follow Through on Statements Moss Would Testify*

Lastly, Moss contends that Keith rendered ineffective assistance by failing to follow through on comments he made to the jury during opening statements that Moss would testify at trial. Cv. Doc. No. 1 at 17. Moss maintains that, by not calling him to the stand and producing the "promised testimony," Keith "left a negative inference in the jury's mind." *Id.*

In his affidavit addressing this claim, Keith avers:

> The petitioner claims I refused to let him testify at trial. The petitioner made it clear to me that he would in fact testify at his trial. As a result, I let the jury know they would hear him testify.
>
> The petitioner already perjured himself once on the record with Judge Fuller when at the pro se hearing to terminate my services he told the Judge I would not let him testify. Judge Fuller reminded the petitioner that he and I met outside the

courtroom to discuss the petitioner's testimony, and that the petitioner himself told Judge Fuller on the record that it was his decision not to testify.

> I planned on the petitioner testifying because he told me all along that "of course" he would testify. The petitioner changed his mind about testifying after he was exposed to the Government's case in chief. It was the petitioner's decision not to produce the "promised testimony."

Civ. Doc. No. 3 at 4.

"[A] criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992). A claim of ineffective assistance of counsel is "the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel." *Id*. at 1534. If an attorney has refused to call a defendant to the stand despite his desire to testify, or if she never informed him of his right to testify and that the decision belonged to him alone, she "has not acted within the range of competence demanded of attorneys in criminal cases." *Id.* (citing *Strickland*, 466 U.S. at 687) (quotation marks omitted).

Because the record conclusively refutes Moss's allegation that Keith deprived him of his right to testify, he cannot establish *Strickland*'s first requirement that counsel's performance was deficient. Moss told the district court during trial that he had, in fact, decided not to testify after he had discussed his rights and options with counsel:

THE COURT: Okay. Mr. Moss, if you'll be sworn.

    (Defendant Moss was sworn.)

THE COURT: Mr. Moss, if you'll just state your name for the record.

DEFENDANT MOSS: James Emmet Moss.

>THE COURT: All right, Mr. Moss, you just heard your attorney make a representation to the Court that he's talked with you about your ability to testify and that it appears to him to be your decision not to testify in your case.
>
>DEFENDANT MOSS: Yes, sir.
>
>THE COURT: All right. Is that, in fact, your decision?
>
>DEFENDANT MOSS: Yes, sir.
>
>THE COURT: And you understand that you do have a right to testify?
>
>DEFENDANT MOSS: Yes, sir.
>
>THE COURT: And you understand you have a right not to testify?
>
>DEFENDANT MOSS: Yes, sir.
>
>THE COURT: That decision is yours alone.
>
>DEFENDANT MOSS: Yes, sir.
>
>THE COURT: Has anyone threatened you or promised or has any inducement whatsoever been made for you not to testify?
>
>DEFENDANT MOSS: No, sir.
>
>THE COURT: Are you electing not to testify because you feel it's in your best interests not to testify?
>
>DEFENDANT MOSS: Yes, sir.

Cr. Doc. No. 313 at 222–23.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Because the record conclusively refutes Moss' assertion that Keith prevented him from testifying, he is not entitled to relief on this claim.

Further, Keith was not ineffective for telling the jury during opening statements that Moss would testify. Moss does not dispute Keith's contention that, when the trial began, he had told Keith he wanted and intended to testify. After the government presented its case, however, Moss

changed his mind about testifying. Counsel is not ineffective for failing to follow through on a "promise" to the jury that a witness will testify when later unforeseen circumstances result in that witness's failure to testify. *See, e.g., United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003). Here, it was Moss' own decision not to produce the promised testimony.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Moss be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before April 27, 2017. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, on this the 13th day of April, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge